IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN WILCOX : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 22-735 |
| : | |
| UNITED STATES DEPARTMENT : | |
| OF COMMERCE, ET AL. : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                                                                February 6, 2024

## I. BACKGROUND

Plaintiff, Stephen Wilcox, alleges the following. From 1996 to 2019, Wilcox served in the military and worked for the federal government in various capacities related to intelligence, law enforcement, and diplomacy. ("Am. Compl.," ECF No. 6, ¶¶ 20, 62–100.) Near the end of 2018, Wilcox returned from an overseas role with the Department of Commerce's ("DOC") Bureau of Industry and Security ("BIS") and was assigned to BIS's Washington, D.C., Field Office. (*Id.*, ¶¶ 74–75, 82, 88.) Wilcox's new role was classified as "career conditional" and required that he serve a one-year probationary period. (*Id.*, ¶ 90.) *See also* 5 C.F.R. 315.801. Throughout his career, Wilcox maintained a top-secret security clearance. (Am. Compl., ¶ 95.) However, in August 2019, Wilcox received an email from the DOC's Office of Security ("OSY") stating, without explanation, that the OSY and DOC's Information and Threats Management Service ("ITMS") had suspended his security clearance. (*Id.*, ¶ 112.) In the following months, Wilcox was interrogated on at least two separate occasions by ITMS agents,

including Defendant Thomas Valentine (and presumably Defendant Jason Bookstaber as well)[1] and other DOC officials as part of an investigation into his security clearance. (*Id.*, ¶¶ 115–21.) Defendant George Lee, ITMS Director, directed the investigation. (*Id.*, ¶¶ 21, 125.)

On December 5, 2019, Wilcox was summoned to the office of his BIS supervisor, Nasir Khan, at BIS's Washington Field Office and was presented with a "Resolution Agreement" ("Agreement") by Khan and another BIS agent. (*Id.* at ¶¶ 88, 148.) Under that Agreement, Wilcox would agree to voluntarily resign from his position and not apply for or accept any other positions with DOC if the OSY did not issue a favorable determination on his security clearance by February 7, 2020. ("Agreement," ECF No. 7-2, ¶ 2.) The Agreement also required Wilcox to waive "any appeal rights he has and not to litigate in any forum, judicial or administrative, any claims arising from a termination or removal" pursuant to the Agreement. (*Id.*) Wilcox was told that if he did not sign the Agreement by the next morning at 9:00 AM, he would be fired. (Am. Compl., ¶ 151.) Wilcox negotiated a handwritten term that allowed him to be employed by DOC contractors and signed the Agreement before the deadline. (*Id.*, ¶ 157; *see also* Agreement.) OSY did not reach a favorable determination regarding Wilcox's security clearance by February 7, 2020, and Wilcox therefore resigned. (*See id.*, ¶ 158; "Mot.," ECF No. 7, at 7 (ECF Pagination).)

Wilcox alleges that the ITMS investigation and his subsequent forced resignation were part of a broader pattern by ITMS of investigating a variety of DOC employees without reasonable suspicion for the purpose of bolstering ITMS's legitimacy and exaggerating its ability

---

[1] The Amended Complaint does not refer to Defendant Bookstaber, though the original complaint alleges that he interrogated Wilcox along with Valentine. (ECF No. 1, ¶¶ 76–77.)

to uncover security risks within the civil service.² (Am. Compl., ¶¶ 171–72; *see also id.*, ¶¶ 137, 163.) He also alleges that the investigation, the suspension of his security clearance, and his subsequent forced resignation caused him significant emotional distress. (*See id., e.g.*, ¶¶ 101, 140, 175, 188–89.) In response to the investigation, Wilcox submitted a Freedom of Information Act ("FOIA") request to DOC and the Department of Navy, seeking "all investigative reports and files" related to inquiries into him. (*Id.*, ¶ 180.) While the Navy responded on time that it "had no file" on Wilcox, DOC did not respond to Wilcox as of the time he submitted his Amended Complaint.³ (*Id.*, ¶¶ 181–82.)

Wilcox has brought five claims: intentional infliction of emotional distress under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) (Count I); violation of his due process rights (Count II); a request for mandamus compelling the rescission of the Agreement (Count III); intentional spoliation of evidence with regard to his FOIA request (Count IV); and failure to respond to his FOIA request (Count V). (*Id.* at ¶¶ 227–79.) The Government has moved to dismiss all claims, except for Count V, under Fed. R. Civ. P. 12(b)(1). (Mot. at 3.)

## II.   LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(1), a party may move to dismiss a claim for lack of subject matter jurisdiction. "A district court has to first determine, however, whether a Rule 12(b)(1) motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that

---

² DOC has since eliminated ITMS, finding that it overstepped its legal authority and engaged in misconduct. *See generally* UNITED STATES DEPARTMENT OF COMMERCE: OFFICE OF THE GENERAL COUNSEL, REPORT OF THE PROGRAMMATIC REVIEW OF THE THREAT MANAGEMENT SERVICE (2021), https://www.commerce.gov/sites/default/files/2021-09/20210903-ITMS-Report.pdf; Shawn Boburg, *Commerce Dept. security unit to be shut down after overstepping legal limits in launching probes, officials say*, WASHINGTON POST (Sept. 3, 2021), https://www.washingtonpost.com/investigations/commerce-disband-itms-investigations-unit/2021/09/03/43e1c8ee-0c0b-11ec-aea1-42a8138f132a_story.html.

³ The Department responded to Wilcox's FOIA request on June 9, 2022, about three weeks after Wilcox filed his Amended Complaint, with a letter and attached documents. (*See* ECF No. 12-1.)

distinction determines how the pleading must be reviewed." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). "A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court." *Id.* at 358. "A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Id.* In contrast to a facial attack, when considering a factual attack, a district court "may look beyond the pleadings to ascertain the facts." *Id.*

Here, the Government claims to make a factual attack. (Mot. at 8.) While we cite directly to the Agreement, which is not included in Wilcox's Amended Complaint but rather in the Government's Motion, in order to give a complete picture of the facts, we need not look beyond the Amended Complaint to find that we lack subject matter jurisdiction to consider the claims the Government moves to dismiss (Counts I–IV). As we discuss *infra*, these claims are deficient on their face.

### III.    DISCUSSION

#### A.  FTCA and Due Process Claims

The Civil Service Reform Act of 1978 ("CSRA") "established a comprehensive system for reviewing personnel action taken against federal employees." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012) (quoting *United States v. Fausto*, 484 U.S. 439, 455 (1988)). Under that system, "[a] qualifying employee has the right to a hearing before the Merit Systems Protection Board (MSPB)" after being subject to removal, suspension of more than 14 days, reduction in grade or pay, or furlough of 30 days or less. *Id.* (citing 5 U.S.C. §§ 7513(d), 7701(a)(1)–(2)); *see also* 5 U.S.C. § 7512). "An employee who is dissatisfied with the MSPB's decision is entitled to

4

judicial review in the United States Court of Appeals for the Federal Circuit." *Elgin*, 567 U.S. at 6; *see also* 5 U.S.C. § 7703(a)(1), (b)(1).

An employee who is on a probationary period under an initial appointment does not have a statutory right to review an adverse action against them to the MSPB.  *See* 5 U.S.C. §§ 7511(a)(1)(A)(i); 7513(d); *see also Stokes v. F.A.A.*, 761 F.2d 682, 684 (Fed. Cir. 1985).  However, probationary employees have limited appeal rights before the MSPB under longstanding Office of Personnel Management regulation.  *Stokes*, 761 F.2d at 684–85; 5 C.F.R. § 315.806.  Still, neither the MSPB nor the Federal Circuit have the authority to examine the merits of a security clearance suspension.  *Biggers v. Dep't of the Navy*, 745 F.3d 1360, 1362 (Fed. Cir. 2014) (citing *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988)).

As the Supreme Court held in *Elgin*, the CSRA's elaborate framework demonstrates Congress' intent to foreclose any further judicial review to both employees to which it grants administrative and judicial review as well as employees to which it denies statutory review. 567 U.S. at 11.  The CSRA's statutory review scheme is exclusive, even for constitutional claims.  *See id.* at 10, 13.  As such, the CSRA "provides an exclusive method for federal civil servants to obtain damages for personnel decisions that violate statutory, regulatory, or constitutional rights." *Yu v. U.S. Dep't of Veterans Affs.*, 528 F. App'x 181, 184 (3d Cir. 2013). "Personnel decisions" are those that occurred "only as a result of the employment relationship" between the employee and the relevant agency.  *Id.*

Accordingly, Wilcox's employment-related claims, Counts I and II, are barred by the CSRA.  Wilcox alleges that the revocation of his security clearance, ITMS's investigation, and being forced to sign the Agreement and subsequently resign caused him severe emotional distress and violated his constitutional rights to due process, and therefore, he is entitled to

damages under the FTCA. (*See* Am. Compl., ¶¶ 227–55.) The actions the Defendants allegedly took against Wilcox occurred "only as a result of his employment relationship" with DOC. *See id.* Moreover, the Third Circuit has held on multiple occasions that claims for damages under the FTCA are barred by the CSRA. *See Manivannan v. United States Dep't of Energy*, 42 F.4th 163, 170–73 (3d Cir. 2022); *Lampon-Paz v. Off. of Pers. Mgmt.*, 732 F. App'x 158, 160–61 (3d Cir. 2018). Even though Wilcox, as a probationary employee, is likely unable to appeal Defendants' actions to the MSPB unless he reframes his allegations, *see* 5 U.S.C. §§ 7511(a)(1)(A)(i); 7513(d); 5 C.F.R. § 315.806; *Biggers*, 745 F.3d at 1362, the CSRA's comprehensive scheme preempts any alternative judicial review even to those employees it denies statutory review to the MSPB and the Federal Circuit, *Elgin*, 567 U.S. at 11.[4] In other words, despite Wilcox's righteous protestations to the contrary (*see generally* Pls' Resp.), "what you get under the CSRA is what you get." *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005).[5]

While Wilcox seems to dispute the very legitimacy of the concept of sovereign immunity (*see* Pls' Resp. at 3–6), it is well established that "the United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The terms of the United States' waiver of sovereign immunity under the CSRA and federal regulations dictates that he must raise Counts I and II before the MSPB and appeal any

---

[4] While Wilcox suggests that he should be granted judicial review in this Court because he was coerced into waiving his appeal rights under the Agreement (*see* Am. Compl., ¶ 161; "Pls' Resp.," ECF No. 8, at 3, 5), he is free to argue to the MSPB that it should hear his appeal for this very reason.

[5] Because we hold that Counts I and II are precluded by the CSRA, we need not address the Government's arguments that Wilcox's intentional infliction of emotional distress claim should also be dismissed as insufficiently pled under Fed. R. Civ. P. 12(b)(6) and that this claim is barred by the FTCA's discretionary function exception. (*See* Mot. at 13, 14–18.)

adverse decision to the Federal Circuit.[6]  Therefore, we do not have jurisdiction to consider Counts I and II.[7]  Accordingly, these counts will be dismissed.

### B. Mandamus

In Count III, Wilcox seeks a writ of mandamus under 28 U.S.C. § 1361 compelling Defendants to rescind the Agreement.  While this count is arguably also precluded by the CSRA because it concerns an action taken by DOC that occurred only as a result of Wilcox's employment with DOC, *see Yu*, 528 F. App'x at 184, the Third Circuit has yet to definitely hold that the CSRA precludes all requests for mandamus relief, *see Lampon-Paz*, 732 F. App'x at 161; *Hinkel v. England*, 349 F.3d 162, 165 (3d Cir. 2003).  Regardless, we hold that Wilcox is not entitled to mandamus relief.

Mandamus is a drastic remedy, "to be invoked only in extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980).  Mandamus is only appropriate when: "(1) the petitioner has no other adequate means to attain the relief sought; (2) the right to the issuance of the writ is clear and indisputable; and (3) the issuing court is satisfied in the exercise of its discretion that mandamus is appropriate under the circumstances." *Gillette v. Prosper*, 858 F.3d 833, 841 (3d Cir. 2017) (cleaned up).  Whatever one might conclude about whether the appeal rights Wilcox has available to him under federal regulation are an adequate means to attain the

---

[6] Under the CSRA, MSPB decisions that concern a plaintiff's allegations that a federal agency violated federal antidiscrimination law are reviewed by the district court. *Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 437 (2017).  Wilcox has not alleged any violation of federal antidiscrimination law.

[7] Given that "[t]he only proper defendant in an FTCA suit is the United States itself," *Hampton v. Jones*, No. 21-2880, 2022 WL 4820355, at *2 (3d Cir. Oct. 3, 2022), the Government asks us to substitute the United States in place of the listed defendants.  (*See* Mot. at 4; ECF No. 12 at 2 (ECF Pagination).)  Because Wilcox's FTCA claim represents only part of his complaint, granting the Government's request would essentially amount to adding the United States as a defendant in this action rather than dismissing the other defendants from this action.  Regardless, because we dismiss Wilcox's FTCA claim as precluded by the CSRA, the Government's request is moot.  *See Hampton*, 2022 WL 4820355, at *2.

relief he seeks, he has not demonstrated what "clear and indisputable" right, whether statutory or otherwise, requires the DOC to rescind the Agreement. While it appears that ITMS may have abused its authority at times, Wilcox has not demonstrated that, regardless of any bad faith on the part of ITMS, he has a legal right to his job back, much less a clear and indisputable one. Wilcox cites to no statute or regulation that supposedly demonstrate this. *See Hondros v. U.S. Civ. Serv. Comm'n*, 720 F.2d 278, 297 (3d Cir. 1983) ("[T]he right to mandamus is 'clear and indisputable' only when the party seeking appointment has a right or entitlement to employment based on statute or regulation."). Moreover, it is well-established that "decisions relating to the hiring, training, and supervision of employees" fall within the discretion of federal agencies. *Brown v. United States*, No. 17-1551, 2018 WL 741731, at *4 and n.4 (E.D. Pa. Feb. 7, 2018), *aff'd*, 823 F. App'x 97 (3d Cir. 2020). In short, mandamus is inappropriate here and Count III will be dismissed.

### C.  Spoliation

In Count IV, Wilcox brings a "spoliation of evidence" claim, alleging that Defendants suppressed and withheld or destroyed all of the evidence in Wilcox's investigation file, evidence which "was relevant to this case and was intentionally withheld even after Plaintiff filed a FOIA request." (Am. Compl., ¶ 265.) Wilcox asserts that he is entitled to sanctions and punitive damages against Defendants. (*Id.*, ¶ 266.) The basis of this asserted cause of action is unclear.

Wilcox cites to just one case, *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76 (3d Cir. 1994). (Am. Compl., ¶ 265.) In that case, the Third Circuit had to determine whether the district court erred by striking the videotaped deposition of plaintiff's expert witness in its entirety. *Schmid*, 13 F.3d at 77. The basis for the district court's decision was that the expert altered the allegedly defective saw at issue in the case in the course of the deposition, during which he

8

examined and discussed his assessment of why the saw was defective.  *Id.*  In *Schmid*, the Third Circuit discussed the concept of the spoliation of evidence.  This concept refers to the idea that a court may admit "evidence tending to show that a party destroyed evidence relevant to the dispute being litigated," which "permit[s] an inference, the 'spoliation inference,' that the destroyed evidence would have been unfavorable to the position of the offending party."  *Id.* at 78.  The court ultimately held that the district court erred because it did not simply allow for the "spoliation inference," but rather barred all evidence emanating from the expert's deposition.  *Id.* at 79.  The court ultimately reversed the district's court's grant of a judgement as a matter of law in favor of the defendant and ordered a new trial.  *Id.* at 77, 81.

*Schmid* was not a case in which a plaintiff brought an independent cause of action for damages based on spoliation.  Rather, it was an evidentiary ruling in relation to an antecedent civil action.  Wilcox "has pointed to no authority that allows for a freestanding spoliation action under federal law and, to the extent that he sought to invoke the District Court's supplemental jurisdiction, Pennsylvania has not recognized an independent action for spoliation."  *Paluch v. Sec'y Pennsylvania Dep't Corr.*, 442 F. App'x 690, 694 (3d Cir. 2011).  Wilcox's spoliation claim is therefore not actionable.  *See Ligato v. Wells Fargo Bank, N.A.*, No. 16-5683, 2018 WL 1141328, at *11 (E.D. Pa. Mar. 2, 2018).  Accordingly, Count IV will be dismissed.  To the extent Wilcox contends that the Defendants committed FOIA violations (*see* Am. Compl. at 38 and ¶ 265), he can make this argument under Count V, "Violation of FOIA" (Am. Compl. at 39).

### IV. CONCLUSION

For the foregoing reasons, Counts I–III will be dismissed without prejudice, while Count IV will be dismissed with prejudice. An appropriate Order follows.

BY THE COURT:


 /s/ R. Barclay Surrick
**R. BARCLAY SURRICK, J**